**WAYNE v. MARZALL, Commissioner of Patents.**

Civ. A. No. 1386–47.

United States District Court.
District of Columbia.

April 17, 1950.

Rehearing Denied June 6, 1950.

John H. Bruninga, of Bruninga & Sutherland, St. Louis, Mo., for plaintiff.

E. L. Reynolds, Solicitor, Washington, D. C., Joseph Schimmel, Attorney, Washington, D. C., for defendant.

MORRIS, District Judge.

This is a proceeding under Section 4915, Revised Statutes, 35 U.S.C.A. § 63, for an adjudication that the plaintiff is entitled to receive a patent as applied for in the claims involved herein, and authorization for the Commissioner of Patents to issue the same. While the complaint deals with several claims, the only ones now involved in these proceedings and requiring adjudication are those numbered 1 to 12, inclusive. It is conceded that, of those twelve, numbers 1 and 4 are typical, and the others should stand or fall according to a determination as to these two. They read as follows:

1. A composition for resolving a petroleum emulsion and dispersible in such an

emulsion, which comprises as a component, a water-wettable, interfacial and surface-active condensation product of a polybasic carboxy acid and hydroxylated amino compound derived initially by a reaction selected from the group consisting of amidification, esterification and soap-formation between a detergent-forming acid and a hydroxy amine.

4. A process of resolving petroleum emulsions comprising, subjecting a petroleum emulsion to the action of a small percentage of a water-wettable, interfacial and surface-active condensation product of a polybasic carboxy acid and a hydroxylated amino compound derived initially by interaction between a detergent-forming acid and a hydroxy amine.

The claims in suit were denied by the Examiner in the Patent Office, and the Board of Appeals affirmed such action, though not in all respects supporting the grounds stated by the Examiner. It will suffice here to deal with the principal objections asserted by the Commissioner of Patents in these proceedings.

█ 1. It is insisted that the claims should not be allowed over the Ellis patent, No. 2,106,522, issued January 26, 1938. The Ellis patent was for a composition and process to produce a resin to be used as a component of a varnish or other coating composition. Admittedly it did not have the properties of being dispersible in a petroleum emulsion, nor did it have the property of a water-wettable interfacial and surface-active condensation product. There is no claim whatsoever that the Ellis product could resolve a petroleum emulsion; that is, to cause the tiny water bubbles in such emulsion to so coalesce as to separate the water from the oil, which is the object and accomplishment of the plaintiff's product. It is true that both start out with substantially the name materials for the first step in the plaintiff's process, but, instead of carrying through as taught by Ellis, the plaintiff interrupts the process with a second step, which goes in a different-almost opposite-direction from that of Ellis, and results in a product wholly different and capable of performing wholly different uses. The art or science of resolving petroleum

emulsion, which is of vital importance in the production of oil, is in no sense served by the Ellis patent, and it has been unquestionably accomplished by the plaintiff's product. The Ellis patent is no bar to the granting of the patent sought by the plaintiff.

It is further insisted that the principles of *res judicata*, arising out of former proceedings, in which certain claims of the plaintiff were considered in connection with the Ellis patent and other matters, preclude the granting of the relief here sought by the plaintiff. For reasons stated later, with respect to such proceedings, I do not agree with this contention.

2. It is most earnestly insisted that the plaintiff should not have the relief sought because his invention is not patentable over certain patents issued to De Groote, et al., No. 2,154,422, issued April 18, 1939, De Groote, et al., No. 2,154,423, issued April 18, 1939, De Groote, No. 2,166,431, issued July 18, 1939, and De Groote, No. 2,166,432, issued June 8, 1943. In the last named patents, the materials used are substantially, if not exactly, the same as those used by the plaintiff, and the end result accomplished the same purpose. The application for the first De Groote patent was filed May 31, 1938, serial No. 211,036, now patent No. 2,166,431, and application, serial No. 211,037, was filed the same date and is now patent No. 2,166,432. Wayne filed his first application, serial No. 152,276, on July 6, 1937, and he filed a subsequent application, serial No. 222,058, on July 29, 1938. A patent, No. 2,214,784, has now issued with respect to certain of the claims therein contained. Wayne also filed on July 29, 1938, application, serial No. 222,061, on which patent No. 2,321,056 has now issued with respect to certain of the claims therein. An affidavit was filed in the Patent Office, showing that the last two applications were based upon conception as early as May 14, 1938, and, therefore, antedated in effect the first two applications filed by De Groote. The other applications were those filed by De Groote, serial No. 224,462, filed August 12, 1938, now patent No. 2,154,422, and serial No. 224,463, filed August 12, 1938, now patent No. 2,154,423. The application filed by

Wayne, which is the one now involved in these proceedings as serial No. 466,527, filed November 27, 1942, is based upon the contention that it is a continuation of applications earlier filed as to the subject matter of the claims in suit and, therefore, it antedates all of the De Groote and De Groote, et al., applications.

■ One of the principal objections to the plaintiff's contention here is that the original application did not in its specifications or examples disclose the use of castor oil as a component of the primary reaction. With respect to this question, substantial testimony was taken at the hearing, to all of which objection was made on the ground that it tended to vary the meaning of the applications themselves. Ruling on this objection was reserved. The examples in the original applications disclosed the use of ricinoleic acid. It is unquestionably necessary to understand what the designation of such component meant to the mind of one skilled and expert in the particular field with which this application dealt. It is also necessary to understand with respect to the alleged indefiniteness of proportions of the component chemicals what one versed in the reaction of such chemicals would understand to be the proper proportions for chemical reaction. For these reasons, I consider the testimony necessary and proper, and the objection to the admission thereof is overruled. From such evidence, it appears clear that the chemical component in the primary reaction is ricinoleic acid, and in the later applications there was no material departure in disclosing the use of castor oil, which is the ester of ricinoleic acid, and an economical source of such acid. Precisely the same is true with respect to oleic acid and its ester olive oil. It is also made clear from the evidence that, the molecular weight and construction of the components being well known to an expert chemist in the particular field here considered, there is no material lack of definiteness as to the required proportion of such components to produce the disclosed reaction.

■ The objection most strenuously urged, although not set forth as a defense in the answer, is that the plaintiff is estopped to assert priority over De Groote because of the course of action in the Patent Office with respect to an attempted interference proceedings and subsequent action in this Court in Civil Action No. 17,838, which was dismissed upon stipulation. It will be recalled that the earlier Wayne applications and the earlier De Groote applications were co-pending in the Patent Office, and upon the De Groote applications patents issued. The plaintiff, having taken steps to establish an earlier conception, sought a determination of priority by interference proceedings, and, pursuant to the rules of the Patent Office, made claims similar to those in the De Groote patent. It was thereupon determined by the Patent Office that the disclosures of the plaintiff did not produce the same results as did the disclosures of De Groote in that the plaintiff claimed that the primary reaction produced amidification, esterification and soap-formation between a detergent-forming acid and a hydroxy amine, while the De Groote process produced esterification only with no soap-formation or amidification. Upon this ground interference proceedings were denied. The plaintiff insists that the obvious result of the Patent Office's determination is that the De Groote patent was a species of the broader disclosures made by the plaintiff and, therefore, the De Groote patent should not in any event stand in the way of the granting of a patent to the plaintiff. The proceedings in Civil Action No. 17,838, which were brought by the plaintiff in this Court under Revised Statutes, Section 4915, involved claims relating to the same subject matter as those here involved; but, while that suit was pending, the plaintiff filed a revised continuation application, and the action in this Court was dismissed upon stipulation which provided: "It is hereby stipulated by and between the parties through their respective counsel that the above entitled cause be dismissed with prejudice as to the claims set forth in plaintiff's bill of particulars herein, but without prejudice as to any claim or claims which have been or may be allowed in any pending application of plaintiff at the cost of plaintiff." Inasmuch as the present proceedings are brought to secure the allowance of claims which were pending at the time of

this stipulation, it is wholly unreasonable to say that such stipulation bars the plaintiff from prosecuting the present action. Neither is there merit in the contention that the action in the Patent Office is in any sense *res judicata* of the matters here to be determined.

■ While I have difficulty in distinguishing the two products based only upon the description of the chemical journey which took place during the transformation of the original chemical ingredients to the end product, I agree with plaintiff that the action of the Patent Office in making such distinction does in effect say that the De Groote disclosure was only a species of the larger and broader claims of the plaintiff. The authorities seem to be well settled that in such circumstances the De Groote patent would not stand in the way of the issuance of a patent to the plaintiff. Certainly his acquiescence in the action of the Patent Office, where interference proceedings were refused because of the distinction made by the Patent Office, cannot be considered to estop him from claiming invention under his broad claims.

■ It is now urged, in objection to the plaintiff's contention, that the De Groote disclosure shows an "esterification type" process, which does preclude the plaintiff from receiving patent protection in so far as esterification is involved in his process. This seems inconsistent with what was actually stated and determined at the time of the refusal to allow the interference proceedings. As I understand it, the interference proceedings are solely for the purpose of determining priority. Priority is relevant only where it is to be determined who should have patent protection for substantially the same thing. It is difficult for me to see how two things can be said to be so different as not to require a determination of priority and yet so much the same thing that one stands in the way of the granting of patent protection to the other. In any event, the evidence adduced at the hearing shows that the reduction to practice by plaintiff, which was as early as 1936, involved a reaction including esterification, but not excluding amidification and soap-formation. I, therefore, do not consider that the De Groote and De Groote, et al., patents stand in the way of the issuance of a patent to the plaintiff on the claims here involved.

■ 3. It is urged in defendant's brief that the evidence disclosed that the product claimed by the plaintiff was made and used commercially in June 1936, which is more than two years prior to the filing date of the 1938 Wayne applications, and that this public use is a bar under Revised Statutes, Section 4886, 35 U.S.C.A. § 31. For the reasons which have been stated, I am of the view that the plaintiff is entitled to have his application considered as a continuation of the original application filed by him in 1937, and the evidence showed that the making and commercial using of his product was within two years of the date of such original application.

■ I am of the opinion that the relief sought by the plaintiff with respect to claims 1 to 12, inclusive, should be allowed. Counsel will prepare appropriate orders for submission.

### On Motion for Rehearing

The defendant filed motion for rehearing upon the ground that the Court had not fully considered argument and authorities relating to the admission of the testimony of an expert witness concerning the meaning of terms used in the original application and the claims here involved, and also upon the ground that the action of the Court did not follow the authorities in this jurisdiction respecting the doctrine of equivalents, and hence the conclusion of the Court was wrong in holding that the present claims providing for the use of castor oil was not a continuation of the original application designating the use of ricinoleic acid.

Upon consideration of the briefs submitted for both parties on this motion for rehearing, I am of the view that the controlling authorities in this jurisdiction do not preclude in this type of proceeding the use and consideration of the testimony which was admitted for the purpose of aiding in the determination of what the terms used conveyed to a person skilled in the art

or science concerned. I am further of the view that the situation here present is not one in which the use of equivalents is employed either for the purpose or with the result of enlarging the original claim. On the contrary, I am of the view that there is an identity between the original and present claims in all respects material to the composition here involved. The motion for rehearing is denied.